[Civ. No. 18464. Second Dist., Div. Two. Oct. 24, 1951.]

THE PEOPLE, Appellant, v. EUGENE W. BISCAILUZ, as Sheriff, etc., Respondent; PRODUCE CLEARINGS (a Corporation), Real Party in Interest.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Appellant.

Harold W. Kennedy, County Counsel, William E. Lamoreaux, Deputy County Counsel, for Respondent.

Derthick & Cusack for Real Party in Interest.

McCOMB, J.—From a judgment denying petitioner's application for a writ of mandate to compel respondent sheriff of Los Angeles County to pay to the Department of Employment (hereinafter referred to as the department) $449.59 held by the sheriff pursuant to the levy of a warrant issued by the department for the collection of contributions owed by one Martin Topper to the department under the provisions of the California Unemployment Insurance Act, petitioner appeals.

*Facts*: Martin Topper, an employer within the meaning of the term in section 9 of the California Unemployment Act (hereinafter referred to as the act), became delinquent in payments to the department in sums totaling in excess of $3,000. Certificates of delinquency evidencing the indebtedness of Martin Topper were filed with the county recorder of the County of Los Angeles in accordance with section 45.10(a) of the act.

On October 7, 1949, the department served by registered mail a notice to withhold on McDonald Brothers, who, at the time, owed Martin Topper $449.49.

Thereafter the notice was duly and regularly renewed and on December 20, 1949, a warrant was issued to the sheriff by the department pursuant to the provisions of section 45.10(b) of the act directing the sheriff to levy execution on the sum of money held by McDonald Brothers. This he did.

Subsequently, Produce Clearings, a corporation, served notice on the sheriff that the money which he had received from McDonald Brothers belonged to it pursuant to an assignment of such sum to it by Mr. Topper in November of 1949, and that it had served notice in August, 1949, on McDonald Brothers that their obligation to Mr. Topper had been sold and assigned to it.

The trial court held the Produce Clearing was entitled to the money in the sheriff's possession and not the department.

 *Questions:* First: *Did the assignment by Mr. Topper of the funds, which McDonald Brothers owed him, to Produce Clearings prior to the time the department (a state agency) issued process against such funds take priority over the claim of petitioner against Mr. Topper as a debtor of the state?*

*Yes.* It is the general rule that garnishees will only be held for debts owing at the time of the service of the writ, and credits which have been transferred or assigned by the creditor cannot subsequently be subject to garnishment as belonging to him. (*Van Orden* v. *Anderson,* 122 Cal.App. 132, 142 [7] [9 P.2d 572]; *McIntyre* v. *Hauser,* 131 Cal. 11, 14 [63 P. 69].)

 Second: *Did the Unemployment Insurance Act create a lien or preference in the Department of Employment (State) prior to the time it commenced proceedings to enforce its claim?*

*No.* Priorities given by the act to the state's claim for delinquent contributions do not give the department any priority or preference in the absence of compliance with the steps outlined by the act for the perfection of a lien upon the property of a debtor. (*Cf. People* v. *Biscailuz,* 95 Cal.App.2d 635, 641 [3] et seq. [213 P.2d 753]; *United States F. & G. Co.* v. *Triborough Bridge Authority,* 297 N.Y. 31 [74 N.E.2d 226, 227]; *In re Van Winkle,* 49 F.Supp. 711, 712 [1-2].)

In the instant case at the time the department caused a warrant to be issued and served upon McDonald Brothers for the funds in its possession belonging to Mr. Topper, Martin Topper had transferred his claim against McDonald Brothers to Produce Clearings, and notice of such assignment and transfer had been given to McDonald Brothers. Therefore when petitioner prosecuted its claim, McDonald Brothers did not hold any property belonging to or owe any money to Mr. Topper. The money in their possession which formerly belonged to Mr. Topper was at such time the property of Produce Clearings.

 Third: *Do the provisions of the Civil Code (sections 3017-3029) relating to assignment of accounts receivable apply to the state?*

*Yes.* Though ordinarily general language in a statute is not sufficient in itself to indicate an intent to make the statute applicable to the government (*Nutter* v. *City of Santa Mon-*

*ica,* 74 Cal.App.2d 292, 300 [168 P.2d 741]), there is an exception to this rule if the state is included by necessary implication. (*Dairy Belle Farms* v. *Brock,* 97 Cal.App.2d 146, 151 [3] [217 P.2d 704].)

Section 3017, Civil Code, reads as follows: "Creditor means a person having any claim, whether matured, or unmatured, liquidated or unliquidated, absolute, fixed or contingent."

Clearly such provision is for the benefit of the state, for had Produce Clearings failed to comply with the provisions of sections 3017-3029 of the Civil Code relating to assignments of accounts, the department's levy would have taken precedence over the prior assignment made by Mr. Topper.

It is to be noted the department had a claim against its debtor (Martin Topper) and that claims are included within the provisions of section 3017 of the Civil Code.

Affirmed.

Moore, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 20, 1951.